CURTIS & a. v. PORTSMOUTH.

A city ordinance expressly assuming a lease for lawful purposes, and communicated to the lessee, is a proposition for the assignment of the lease.

If before the proposition is withdrawn the lessee makes and delivers to the city an assignment of the lease, the contract is completed, and is not within the statute of frauds.

BILL IN EQUITY, by Joseph R. Curtis and others, constituting an unincorporated association at Portsmouth called Storer Post No. 1, Department of New Hampshire, Grand Army of the Republic, against the city of Portsmouth, for the specific performance of a contract. Facts agreed.

The Portsmouth Academy, a corporation located in Portsmouth, on the 28th day of March, 1891, leased the property known as the Portsmouth Academy, situate in Portsmouth, to the Storer post, for the term of fifteen years from the first day of April, 1891, at a rental of $500 a year in gold coin. The lease provided, among other things, that the Storer post should make all necessary repairs, and should have the right to make at their own expense any interior alterations which would not lessen the strength of the edifice, and any additions upon the exterior which would not alter or injure the main building; that the lessees should pay all taxes assessed on the premises, and should keep the property insured in the sum of $5,000 for the benefit of the lessors. There were also provisions that the lessees should not underlease the premises or assign the lease without the consent in writing of the lessors, and that at the expiration of the lease the lessors would sell and the lessees would purchase the premises for the sum of $9,827 in gold, upon condition that the buildings when so purchased should be used as a memorial hall and public library, and for no other purpose whatever.

In May, 1891, negotiations were begun between the city and the Storer post relative to an assignment of the lease by the post to the city, which resulted in the adoption, July 24, 1891, of the following ordinance:

"Joint resolution authorizing the city to assume the lease of the Portsmouth Academy, now held by Storer Post No. 1, G. A. R.

"Be it ordained by the city councils of the city of Portsmouth:

"That by this ordinance the city does hereby assume and become responsible for the faithful performance of all and every portion of the lease, now held by Storer Post No. 1, G. A. R., of this city, of the building and land of the Portsmouth Academy from its proprietors, executed March 28, 1891, said lease having been duly and legally assigned by said post to the city; and be it also ordained,—

" That a joint committee, consisting of three members from each branch of the city councils, with three members from the board of trustees of the public library, be and hereby are constituted a committee for the purpose of remodelling and improving the said academy building for the following purposes : The upper hall as a memorial hall, and for the use of said Storer Post No. 1, G. A. R., and the lower hall for the use of the public library. The committee on finance are hereby authorized to create a loan for such sum as may be required for the purpose of carrying out the provisions of this ordinance."

This ordinance was recorded in the city records, and a copy thereof presented to the Storer post, which, on the 29th day of July, 1891, voted that certain members thereof be granted full power to assign to the city the lease of the Portsmouth Academy held by the post. On the 30th day of July, 1891, the following assignment was made and duly executed :

" Storer Post No. 1, Department of New Hampshire, Grand Army of the Republic, an unincorporated organization of Portsmouth, N. H., by its duly authorized committee, Joseph R. Curtis, Charles H. Besselievre, Matthew T. Betton, Marcus N. Collis, Joseph Foster, and Henry S. Paul, for and in consideration of receiving from the city of Portsmouth the exclusive right to use and control, without rent, the upper floor or upper hall of the academy building in said Portsmouth, with the right of access to the same, for itself and its auxiliary organizations, now enjoyed by said post under its lease of the building and land of the said Portsmouth Academy from its proprietors, executed March 28, 1891, during the term of said lease, or during the ownership of said building, if purchased under the privileges of the lease, by the city of Portsmouth, does hereby assign said lease to the said city of Portsmouth under the provisions of the joint resolution passed by the common council of the city of Portsmouth, May 28, 1891, and by the board of mayor and aldermen July 24, 1891."

Storer post obtained the written assent of the lessors to the assignment, and delivered the assignment to the city clerk, who sent it to the Rockingham registry of deeds and had it recorded ; and the recorder's fees therefor were paid from the city treasury.

The committee for the city, appointed under the ordinance of July 24, 1891, adopted plans for the work to be done on the upper and lower floors, and sent by mail to several carpenters and builders specifications for the work, and invited proposals or bids. The city has never taken physical possession of the building, and refuses to perform any part of the alleged contract.

*Samuel W. Emery* and *John S. H. Frink*, for the plaintiffs.

*Calvin Page* and *Ernest L. Guptill*, for the defendants.

WALLACE, J.   The first question that arises is, Was there a contract completed between the Storer post and the city of Portsmouth? Although the ordinance passed by the city councils erroneously recited that the lease had been assigned to the city, yet by its terms the city offered to "assume and become responsible for the faithful performance of all and every portion of the lease." A presentation of a copy to Storer post was a proposition for a contract on the part of the city. When the post accepted this offer, as they did by their vote to assign the lease to the city, and by assigning it and delivering the assignment to the city clerk, it became a completed contract between the parties. *Hunneman* v. *Grafton*, 10 Met. 454.

The defendants insist that the ordinance contains no offer for the use by the plaintiffs of the upper hall free of rent. But this position is not sustained by a reasonable construction of the ordinance. It was an offer to "assume and become responsible for the faithful performance of all and every portion of the lease," to remodel and improve "the upper hall as a memorial hall and for the use of Storer post," and to pay the rent reserved by the lease. There is nothing in the language of the ordinance from which it can be inferred that the proposition did not contain every stipulation which the city intended to require. In the absence of any provision for the payment of rent by the plaintiffs to the city for the use of the upper hall, it is plain the city did not intend to require the payment of rent. The right of the post to the use and control without rent of the upper floor of the academy building was a sufficient consideration for the contract. The post had a property interest in the lease, and they parted with it by the assignment in consideration of receiving the free use of the upper hall instead of a sum of money. The one is as good a consideration as the other.

The contract is not within the statute of frauds. The ordinance and the assignment of the lease, taken together, constitute the contract, and both being in writing, they are sufficient to bind the city and take the contract out of the statute. Dill. Mun. Corp. 449; *Argus Co.* v. *Albany*, 55 N. Y. 495; *Chase* v. *Lowell*, 7 Gray 33; *Johnson* v. *Trinity Church Society*, 11 Allen 123, 127; *Tufts* v. *Plymouth Gold Mining Co.*, 14 Allen 407, 412.

The contract was not *ultra vires.* The city had the power under the statute to provide a public library and reading-room, and a memorial building. P. S., *c.* 40, *s.* 4. A contract for that purpose made by the city would be within the scope of its powers. The fact that a part of the building was to be occupied by the Storer post does not make the contract *ultra vires.* The city made the contract in good faith, for the purpose of providing a memorial building and a suitable place for a library, and the occupation by the post is incident and subordinate to this general purpose. The case is similar to that of a municipality's leasing parts of a

town or city hall, not needed for municipal purposes, for stores or offices. *Spaulding* v. *Lowell*, 23 Pick. 71 ; *French* v. *Quincy*, 3 Allen 9.

The court cannot revise or control the decision of the city councils as to the propriety of selecting any particular lot for a library site or a memorial building, or in regard to what kind of a building they shall have, or whether they shall have any, as those matters are within the discretion of the city officials and are to be determined by them. *Kelley* v. *Kennard*, 60 N. H. 1. When they have decided these questions, and have entered into a valid contract in regard to the matter, the court will enforce it the same as any other contract. The plaintiffs are interested in having it enforced to the extent that the city shall be required to take the lease of the building and perform the covenants of the lease, give them the free use of the upper hall during the term specified, and have the building remodelled and improved so far as the improvements relate to and affect the upper hall. So far as the contract relates to the lower part of the building and its use for a library, the plaintiffs are not interested more than the rest of the public. They appear simply for the protection of their own interests.

The defendants claim that equity will not enforce a contract to repair or rebuild, and that the contract in reference to remodelling and repairing the building is too indefinite to be specifically enforced. Without deciding whether the contract in regard to repairing or remodelling the building can or should be specifically enforced against the city, we think a pecuniary compensation to Storer post for a breach of that portion of the contract relating to the changes and improvements in the upper hall will furnish them an adequate remedy.

*Case discharged.*

DOE, C. J., did not sit: the others concurred.